Fletcher, J.
This is an action of assumpsit for goods sold and delivered. Upon the trial, it appeared by the testimony of Mr. Addison Child, that he was the agent of the plaintiffs, who did their business in Baltimore, Maryland; that, about the 19th March, 1849, he received, from the agent of the defendants, who do their business in Cambridge and Boston, a verbal order for a cargo of coal, to be shipped by the plaintiffs from Baltimore, in a vessel drawing not more than ten feet of water, at a freight not over $2.25 a ton. This order the witness forwarded to the agent of the plaintiffs, in Baltimore, and, on the 14th April, 1849, the cargo was shipped on board a schooner which drew, when fully loaded, nine feet and nine inches only.
By the bill of lading, the cargo was consigned to Mr. Child, the plaintiffs’ agent, or his order, for the defendants. This bill of lading was forwarded by the plaintiffs to Mr. Child, and received by him, in due course of mail, on the 16th of 17th of April, and specified the freight to be $2.45 a ton. On the day it was received, it was indorsed by Child, and together with a bill of the coal, left by him in the counting-room of the defendants’ agent, who was at that time absent. As soon as the defendants’ agent returned, he sent back the bill of lading and refused to receive the coal.
The said bill for the coal reduced the price twenty cents a ton, so that the freight on the same, to be paid by the defendants, need not exceed their limits of $2.25 a ton.
On the passage from Baltimore to Boston, the vessel in which the coal was shipped foundered. After being raised and repaired, she arrived in Boston, when the plaintiffs, by their aforesaid agent, tendered the coal to the defendants, who refused to receive it.
It was proved on the trial, that, by the usage of the coal trade between Baltimore and Boston, when coal is ordered in Boston from Baltimore, the delivery of it on board a vessel consigned to the person ordering it is a compliance with the order, and the coal is, thereafter, at the risk of the party ordering it.
The defence is, that, according to the provisions of the *118 statute of frauds, this being a contract for the sale of goods, wares and merchandise, for the price of fifty dollars or more, and there being no note or memorandum of the bargain in writing, the contract was not binding, unless the purchaser shall accept and receive part of the goods, or give something in earnest to bind the bargain, or in part payment.
There was nothing given in earnest, or in part payment. The only question is, whether the defendants did accept and receive the goods, or any part of them.
That there was no actual manual taking or occupation of the coal by the defendants, is quite clear.
As soon as the defendants’ agent had knowledge that the bill of lading was left at his counting room, he forthwith sent it back to the plaintiffs’ agent, and expressly refused to receive the coal. When the coal arrived and was tendered to the defendants’ agent, he at once refused to receive it; so that the defendants have promptly repelled all attempts to make an actual delivery of the coal to them, and have promptly refused to accept and receive the coal, or any part of it.
But the learned counsel for the plaintiffs maintains, with much ability, that it is not necessary that there should be an actual manual taking or occupation of the coal, but that there may be a constructive accepting and receiving, and that the receiving on board the vessel was a sufficient accepting and receiving by the defendants.
The proposition of the plaintiffs’ counsel, that there may be a constructive accepting and receiving, or a receiving without the actual manual occupation by the purchaser, seems to be well sustained by the authorities. Therefore, in many cases, it is made a question to the jury, whether the purchaser, by his mode of acting or forbearing to act, or by some acquiescence, has not accepted the goods, though there has been no actual manual taking and occupation of them by him.
The further proposition of the learned counsel for the plaintiffs, that the acceptance and receipt, to satisfy the statute of frauds, are not such as to preclude the purchaser from after-wards objecting to the quantity or quality of the goods, is *119 certainly fully sustained by the case of Morton v. Tibbett, 15 Adol. & Ellis, N. S. 428.
This case, in this particular, differs from many previous cases, which are all carefully referred to and commented on by the chief justice of the queen’s bench, in delivering the opinion of the court.
In Morton v. Tibbett, the receipt of the goods is considered as a substitute for writing, leaving to the purchaser the same right to object that the contract has not been complied with, which he would have if the contract had been in writing.
The other and most material proposition on behalf of the plaintiffs, that the coal, when delivered on board the vessel, was accepted and received by the defendants, within the provision of the statute, remains to be considered.
That a delivery to a carrier is not sufficient to satisfy the statute, as a general proposition, is undoubtedly true, and is very properly admitted by the plaintiffs’ counsel. But it is maintained that the master of the vessel, under the particular circumstances of the case, was an agent to accept, to satisfy the statute, because, in the first place, he was a carrier nominated by the defendants. But the facts show, that the verbal order of the defendants was merely to have the coal shipped by the plaintiffs from Baltimore, in a vessel drawing not more than ten feet of water, at a freight not over $2.25 a ton. No reference was made to any particular vessel or master. Even this very general order was not complied with by the plaintiffs, as the freight was $2.45 a ton, instead of $2.25, as was ordered.
This departure in the price of the freight would, perhaps, of itself, be sufficient to exempt the defendants from the liability to take and pay for the coal. But it is not necessary to put the case on that ground, or attach any importance to that point.
The order as to a vessel was very general, referring to no particular vessel or master, specifying only the draft of water and price of freight.
The master was merely a carrier, and the taking by him would in no sense, and upon no principle, be regarded as a receipt by the vendee.
*120 The case of Morton v. Tibbett was much stronger than the present. There, the defendant himself sent a particular light-erman to receive the wheat. But the delivery to the lighter-man was not considered to be a receipt by the vendee, though other acts of the vendee, tending to show an acceptance by him, were regarded as sufficient to justify a verdict for the plaintiff.
So, also, in Bushel & others v. Wheeler, which is reported in connection with Morton v. Tibbett, the vendee ordered the goods to be forwarded by a particular sloop. Yet the delivery on board the sloop was not regarded as a receipt by the ven-dee within the statute, though the subsequent acts and forbearing to act on the part of the vendee, were held to be sufficient to go to the jury, to find an actual receipt by the vendee.
It is, therefore, quite clear, that a delivery on board the vessel, in this case, cannot be regarded as a receipt, within the provision of the statute, by the vendee, on the ground that the defendant ordered the coal to be forwarded in that way.
But it is further maintained, for the plaintiff, that the master of the vessel was an agent to accept, within the statute, because the usage of trade made him such in the coal trade between Boston and Baltimore. The usage, as shown, was, that, when coal is ordered in Boston from Baltimore, the delivery of it on board a vessel, consigned to the person ordering it, is in compliance with the order, and the coal is, thereafter, at the risk of the party ordering it.
It does not, in terms, appear, whether or not this usage applies to mere verbal orders, which are invalid by the statute of frauds.
Nor is it shown upon what ground this usage can be set up and maintained, against established provisions and principles of law. Upon general principles of mercantile law, when a person accepts a written order, and delivers goods on board a vessel according to the order, consigned to the person ordering them, in common form, they are then, of course, at the risk of the consignee.
*121 "When orders have been received and executed, and delivery has been made to the master of the ship, and bills of lading signed and forwarded, the seller is functus officio, and can do nothing more, except so far as he may have a right of stoppage in trcmsitu.
It is unnecessary to consider how far there could be any usage affecting the rights of the parties in this case, as it is quite clear that the case is not within the usage set up and relied upon. The usage is said to be, that, when coal ordered is delivered on board a vessel consigned to the party ordering it, that is a compliance with the order, and the coal is, thereafter, at the risk of the party ordering it.
But, in the present case, the coal was not consigned to the party ordering it, but, on the contrary, was consigned to the plaintiffs’ own agent. By the bill of lading, the coal was to be delivered to Addison Child, or his assigns. But the bill of lading expressed that it was to be delivered to Addison Child, for the New England Glass Company; and, when the bill of lading was received by the consignee, he indorsed it and offered it to the defendants’ agent, which, it is said, was a substantial compliance with the alleged custom. The supposed custom required the coal to be consigned to the defendants, but it was, in fact, consigned to the plaintiffs’ agent. This, so far from being a substantial compliance with, was the widest possible departure from, the custom.
The bill of lading gave the defendants no right to, or control over, the coal, and, when indorsed and offered to the defendants’ agent, was promptly rejected.
There having, therefore, been no acceptance of the coal by the defendants to satisfy the statute of frauds, according to the provision of the report, the plaintiffs must become nonsuit.

Plaintiffs nonsuit.